# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**LAWRENCE EDWARD MARTIN**                                                                 **PETITIONER**

**v.**                          **NO. 4:22-cv-01271-KGB-PSH**

**DEXTER PAYNE**                                                                                     **RESPONDENT**

## ORDER

The record reflects that on November 8, 2022, petitioner Lawrence Edward Martin ("Martin"), an inmate in the Arkansas Division of Correction's East Arkansas Regional Unit, signed for legal mail that he was expecting. See Docket Entry 24, Exhibit 1. Because the mail looked suspicious, prison officials tested it for contraband. After the mail tested positive for methamphetamine, he was charged with violating rule 2-5, unauthorized use of mail/phone; rule 09-3, possession/introduce drugs; and rule 15-3, purchase of authorized articles. He was convicted of the rule violations, and his punishment included a reduction in class and a period of punitive isolation.

On November 12, 2022, Martin again signed for legal mail that he was expecting. See Docket Entry 24, Exhibit 2. The mail looked suspicious, and it tested positive for contraband. He was drug tested the following day, and the results were positive for methamphetamine. He was charged with violating rule 2-5, unauthorized use of mail/phone; rule 09-3, possession/introduce drugs; and rule 15-3, purchase of authorized articles. He was convicted of the rule violations, and his punishment included a second period of punitive isolation.

On November 15, 2022, Martin was ordered to move to another barrack. See Docket Entry 24, Exhibit 3. He refused to do so because he was scared. He was charged with violating rule 12-4, refusing a direct verbal order, and rule 03-5, out of place of assignment. He was convicted of the rule violations, and his punishment included commissary, telephone, and visitation restrictions.

Martin began this case by filing what was construed as a petition pursuant to 28 U.S.C. 2254. Liberally construing his subsequently filed amended petition, he advanced the following claims:

> 1) The inmate disciplinary manual was violated when the charging officer did not sign the November 8, 2022, and November 12, 2022, disciplinaries. See Docket Entry 7 at CM/ECF 5.

> 2) The inmate disciplinary manual was violated when the warden failed to timely respond to Martin's appeal of the November 8, 2022, November 12, 2022, and November 15, 2022, disciplinaries. See Docket Entry 7 at CM/ECF 5.
>
> 3) The inmate drug testing policy was violated in several respects, one of which was that his urine sample was not tested by a licensed toxicologist. See Docket Entry 7 at CM/ECF 7.
>
> 4) Given the procedural irregularities in the three disciplinary proceedings, Martin was subjected to false arrest/illegal detention. See Docket Entry 7 at CM/ECF 8.
>
> 5) His life is constantly in danger because one guard is required to supervise eight of the barracks. See Docket Entry 7 at CM/ECF 10.

Martin asked that he be awarded injunctive relief and relief that included the following: he be transferred to another facility, he be compensated for the time he spent in punitive isolation, the three disciplinaries be reversed, his class I-C status be restored, and he be credited for $150.00 at the commissary.

Respondent Dexter Payne ("Payne") filed a response to the petition. In the response, Payne maintained, in part, that the petition should be dismissed because Martin's claims are not cognizable in a proceeding pursuant to 28 U.S.C. 2254. Payne so maintained because Martin's claims do not challenge the fact or duration of his confinement. Payne supported his contention by noting the following:

3

> ... [Martin's] reduction in class status is a condition of confinement to which any due-process challenge must be raised under 42 U.S.C. 1983. ... [His] loss of commissary, phone, and visitation privileges also does not give rise to any liberty interest. ... He did not suffer a loss of earned good time, as he is confined for life without parole. ...

See Docket Entry 24 at CM/ECF 4-5. Payne alternatively maintained that Martin's claims are meritless because he was afforded all of the process he was due under Wolff v. McDonnell, 418 U.S. 539 (1974).[1]

The case at bar is not unlike Crockett v. Kelley, No. 5:18-cv-00210-JM-JTR, 2019 WL 1590947 (E.D. Ark. 2019), report and recommendation adopted, No. 5:18-cv-00210-JM, 2019 WL 1590588 (E.D. Ark. 2019). There, Crockett was serving a life sentence and came to be convicted of a disciplinary. His punishment for the disciplinary included the loss of good-time credits. He challenged the disciplinary by filing a petition pursuant to 28 U.S.C. 2254. In the petition, he maintained, in part, that the disciplinary proceeding failed to comport with the requirements of due process. United States District Judge James M. Moody, Jr., dismissed the petition, doing so on the recommendation of United States Magistrate Judge J. Thomas Ray. Judge Moody's reasons for doing so included the following:

---

[1] Martin later filed a reply, as well as a supplemental reply. In the submissions, he advanced many of the same assertions he made in his amended petition.

A prisoner may maintain a procedural due process challenge to a prison disciplinary proceeding only if he is deemed to have a liberty interest sufficient to trigger the protections of the Fourteenth Amendment. Sandin v. Conner, 515 U.S. 472, 485-86 (1995); Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2002). Liberty interests arising from state law are limited to "freedom from restraint" which "impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or to actions which "inevitably affect the duration of [a prisoner's] sentence." Sandin v. Connor, 515 U.S. 472, 484, 487 (1995).

In a habeas action, "[i]f the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy." Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam) (citing Preiser v. Rodriguez, 411 U.S. 475, 499 (1983)) (emphasis added); see also Spencer v. Haynes, 774 F.3d 467, 469-70 (8th Cir. 2014) (citing and applying Kruger). Thus, for Crockett's claims arising from the disciplinary proceeding to implicate a "liberty interest" capable of making them actionable under 2254, he must establish that the loss of 500 days of good-time credit served to lengthen his sentence. As the Court noted in Sandin, the "Due Process Clause itself does not create a liberty interest in credit for good behavior." Id. at 477. Instead, a court must look to the specific state statute in question to determine whether a liberty interest in good-time credit has been created by the state. Id.

Arkansas statutory law establishing good-time credit "plainly states '[m]eritorious good time will not be applied to reduce the length of a sentence,'" but instead impacts an inmate's "transfer eligibility date." McKinnon v. Norris, 366 Ark. 404, 408, 231 S.W.3d 725, 729 (Ark. 2006) (quoting Ark. Code Ann. 12-29-201(d) and (e)(1)) (emphasis added). In McKinnon, the Arkansas Supreme Court rejected the state habeas petitioner's claim that his prison sentence had been extended unlawfully because, following a prison disciplinary, his good-time credits were forfeited and his ability to earn future credits was

5

eliminated. According to the Court, "Arkansas has not created a liberty interest in good time under the constitutional analysis in Wolff v. McDonnell," (emphasis added). Id. at 408-409, 231 S.W.3d at 730.

The Court's legal conclusion in McKinnon is not binding on federal courts. However, courts in the Eastern District of Arkansas have reached the same conclusion under federal law. As United States Magistrate Judge Beth Deere reasoned in a Recommendation adopted by United States District Judge Leon Holmes:

> Instead of reducing the term of a prisoner's sentence, Arkansas's good-time statute reduces the time until the inmate is eligible for transfer, i.e., consideration of parole. Persechini v. Callaway, 651 F.3d 802, 808 (8th Cir. 2011).
>
> There is clearly a difference between being in the free world under supervision (parole) and being confined in a prison 24-hours a day, seven days a week, even though in both circumstances the inmate is serving his or her sentence. This stark difference is recognized by an inmate's liberty interest in the revocation of parole. But the Supreme Court has long noted the distinction between parole release and parole revocation. Greenholtz v. Inmates of the Neb. Penal and Corr. Complex, 442 U.S. 1, 99 S.Ct. 2100 (1979). The crucial difference is "between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." Id. at 9. Under Arkansas law, good-conduct time reduces the length of time until an inmate is eligible for parole, but it does not reduce the length of the sentence itself. See Ark. Code Ann. 16-93-614 and Ark. Code Ann. 12-29-201(d).

> In sum, Mr. Roberts has a liberty interest in release at the expiration of his sentence; he does not have a liberty interest in the possibility of a conditional release prior to the expiration of his sentence. See Swarthout v. Cooke, 131 S. Ct. 859, 862 (2011) (the federal constitution does not confer a right to be conditionally released before the expiration of a valid sentence).

Roberts v. Hobbs, Case No. 5:14-cv-00044-JLH-BD, 2014 WL 1345341, 2-3 (E.D. Ark. April 4, 2014), certificate of appealability denied, Case No. 14-1930 (8th Cir. Aug. 12, 2014). Thus, the Court concludes that the legal analysis in Roberts and McKinnon are persuasive and squarely support the denial of Crockett's claims.

Finally, Crockett's claims also fail for another reason: he is serving a life sentence. Under Arkansas law, "[i]nmates sentenced to life imprisonment shall not receive meritorious good time calculated on their sentences unless the sentence is commuted to a term of years by executive clemency," at which time the inmate "shall be eligible to receive meritorious good time." Ark. Code Ann. 12-29-201 (emphasis added); see also Hobbs v. Turner, 2014 Ark. 19, at 7, 431 S.W.3d 283, 287) ("Generally, in Arkansas, life means life" and parole is not a possibility.). Thus, unless Crockett's sentence is commuted by executive clemency, the amount of accrued good-time credits can have no possible impact on the length of his sentence. Crockett makes no showing that he is a likely candidate for executive clemency, which is rarely granted. Accordingly, Crockett has no "liberty interest" in the loss of good-time credits.

Because Crockett has failed to show that the loss of good-time credits will have any impact on the length of his sentence, his claim should be denied.

See Id. at 2019 WL 1590947, 2-4 (emphasis in original) (footnotes omitted). See also Rodriguez v. Kelley, No. 5:19-cv-00077-KGB-JTK, 2019 WL 8403589 (E.D. Ark. 2019), report and recommendation adopted, 5:19-cv-00077-KGB, 2020 WL 1845230 (E.D. Ark. 2020).

Martin's claims do not involve the validity of his conviction or the length of his detention.[2] Although habeas corpus relief may be available for loss of good-time credits, such relief is not available here because he does not have a liberty interest in the possibility of his conditional release prior to the expiration of his sentence. To the extent he lost good-time credits as a result of the three disciplinaries, and it is not clear that he did, the loss of the credits did not lengthen his sentence. Moreover, Martin is serving a sentence of life imprisonment without the possibility of parole. Unless his sentence is commuted, and he has made no showing that it might be, the amount of accrued good-time credits has no impact on the length of his sentence. The Court finds that the claims at bar are indeed conditions-of-confinement claims and outside the scope of 28 U.S.C. 2254. A writ of habeas corpus is not the proper remedy here.

---

[2] Claims relating to reduction in class, assignment to punitive isolation, and commissary, telephone, and visitation restrictions are conditions-of-confinement claims. See Croston v. Payne, No. 4:22-cv-00616-LPR-JJV, 2022 WL 18106996 (Aug. 23, 2022), report and recommendation adopted, No. 4:22-cv-00616-LPR, 2023 WL 23806 (Jan. 3, 2023).

What, then, should happen next? In Spencer v. Haynes, 774 F.3d 467 (8th Cir. 2014), the United States Court of Appeals for the Eighth Circuit held that, where a petitioner has improperly raised "potentially viable" conditions-of-confinement claims in a habeas corpus proceeding, the Court should "recharacterize the claim[s] into the correct procedural vehicle" instead of dismissing the case for lack of jurisdiction. See Gordon v. Cain, No. 2:17-cv-00114-KGB-JTK, 2018 WL 8786163, 2, (E.D. Ark. July 30, 2018), report and recommendation adopted, No. 2:17-cv-00114-KGB, 2019 WL 3059849 (E.D. Ark. July 11, 2019) (quoting Spencer v. Haynes, 774 F.3d at 471). Before recharacterizing the claims, though, the Court should obtain the petitioner's consent.

The Court finds that Martin has raised "potentially viable" conditions-of-confinement claims, which can only be raised in a complaint pursuant to 42 U.S.C. 1983. In accordance with Spencer v. Haynes, the Court orders the following:

1) Martin is given up to, and including, July 14, 2023, to notify the Court of his desire to convert this case from one pursuant to 28 U.S.C. 2254 to one pursuant to 42 U.S.C. 1983. He shall make his desire known by filing a simple statement of his consent.

2) If Martin elects to convert this case to one pursuant to 42 U.S.C. 1983, he should be aware that he must comply with the filing fee requirements for prisoner cases, which require a $402 filing fee. If he obtains permission to proceed in forma pauperis, he need only pay a $350 filing fee, and it may be paid in installments.[3]

3) In the event Martin fails to notify the Court by July 14, 2023, of his desire to convert this case to one pursuant to 42 U.S.C. 1983, the Court will recommend that this case be dismissed.

IT IS SO ORDERED this 13th day of June, 2023.

_____
UNITED STATES MAGISTRATE JUDGE

---

[3] Martin began this case by filing the five dollar filing fee required for petitions pursuant to 28 U.S.C. 2254. See Docket Entry 18.